WILLIAMS, Senior Circuit Judge.
I concur in the court’s opinion except Part' III.B. I’m not' convinced that the FDA adequately explained how a single-dose study satisfied its bioequivalency standard.
In the first appeal of this casé, we remanded precisely on this issue, finding that the FDA’s “conclusory response to [Alpharma] that it ‘does not believe that it is necessary to test different levels of the drugs and compare dose-response curves’ [is not] sufficient.” A.L. Pharma, Inc. v. Shalala, 62 F.3d 1484, 1492 (D.C.Cir.1995). We based this ruling on a record containing affidavits and letters of 16 experts arguing, in essence, that a single-dose study was weak support for an inference that the new drug was truly bioequivalent to the benchmark drug. See, e.g., Johnson Aff. ¶ 8 (concluding that “several levels at equally spaced intervals of the drug should be tested and a dose response curve constructed” because “[u]sing a single dose level and finding 100% success only indicates that the drugs are effective at the stated level”). Most of the rest make essentially this point. In response, the FDA’s Chesemore Letter offers two substantive reasons that persuade the majority] but I find each defective. (I do not discuss the FDA’s historical practice, as practice alone would not constitute an adequate explanation in the face of a serious substantive challenge.)
First, the FDA asserts that multiple dosages are only necessary for sustained release drugs and drugs exhibiting nonlinear kinetics (“SRNK” drugs). But nowhere does the FDA provide an explanation of why only SRNK drugs should be tested this way. Nothing in the record establishes that if the benchmark and new drug exhibit linear kinetics and have the same effects at one dose, they will have the same effect at all doses (or, more pertinently, at all doses likely to be lawfully prescribed in the event of approval).
Indeed, nonlinear kinetics appear to be a complete red herring. We are told by the FDA on brief that “nonlinear kinetics exists where absorption, distribution, and
*13 elimination of a drug cannot be defined by rate constants that are concentration-independent.” FDA Br. 18 n.5. But the absorption, distribution, and elimination of a drug appear to refer to attributes of a blood level study, not a pharmacologic endpoint study, which the Prescott Study was. Compare Center for Veterinary Medicine, Bioequivalency Guideline 5-8 (April 12, 1990) (discussing how blood level studies “encompass ... absorption and depletion (elimination) phases of the drug concentration profiles” and that “a single dose study at the highest approved dose will generally be adequate for the demonstration of bioe-quivalence”); with id. 13-15 (noting that “[w]here the direct measurement of the rate and extent of absorption ... is inappropriate or impractical, the evaluation of an appropriate pharmacologic endpoint will be acceptable” and that “[d]osage(s) approved for the pioneer product should be used in the study”). Moreover, as with nonlinear kinetics, the FDA provides no discussion of sustained release drugs. The FDA’s terse incantation of SRNK drugs thereby provides no basis for an adequate explanation.
Second, the FDA asserts that dose-response studies are designed to choose optimally effective doses. But the fact that multiple-dose testing is required to determine the optimal dose tells us nothing about whether such testing is sensible to show bioequivalence. Moreover, as Alp-harma argues, the assertion begs the question of what it means to “perform similarly in a chosen test system,” see Chesemore Letter at 2, failing to provide an explanation of how bioequivalence can be established without testing in the ranges that are plausible for the drugs’ uses.
The FDA might, though it seems implausible, show that multiple-dose testing affords no material increase in confidence in the bioequivalence of the two drugs. More likely, it might offer some reason to believe that although multiple-dose testing was more accurate, the gain in accuracy wasn’t worth the time and cost. Barring some statutory problem, we would properly defer to such a view. Alternatively, of course, the FDA may find that multiple-dose testing is sound as a matter of both science and policy.
In short, the FDA’s response to our remand seems completely unilluminating. As the court remands for the FDA to straighten out its explanation of what (single) dose to use, perhaps the agency will seize the occasion to explain its single-dose policy. Users of new drugs would surely find relief in a real explanation.